## GARDINER CAMPBELL CO. v. IROQUOIS IRON CO.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1904.)

### No. 1,020.

1. SALE—CONTRACT FOR GOODS TO BE DELIVERED ON ORDER—EFFECT OF ASSIGNMENT BY PURCHASER.

Where plaintiff, with whom defendant had contracted to furnish a stipulated quantity of pig iron, as ordered during a year, at a stated price, and on a credit of 30 days, afterward sold its works, and assigned the contract to the purchaser, notifying defendant of such fact, its action amounted to a surrender of its right to demand delivery of the iron thereunder, and it was not revested with such right by a reassignment of the contract.

2. SAME—ACTION FOR BREACH OF CONTRACT—EVIDENCE.

An executory agreement by which plaintiff contracted to assign the contract to the purchaser of its plant on condition that defendant would consent thereto was not admissible in evidence in an action by plaintiff for breach of the contract by defendant's refusal to furnish the iron, where there was no proof that an absolute sale and assignment of the contract was not thereafter made, as stated in plaintiff's notice to defendant.

3. APPEAL—REVIEW—QUESTIONS NOT PRESENTED TO TRIAL COURT.

To warrant the reversal of a judgment for the exclusion of evidence, the record must show interrogatories and offers which presented to the trial court the question relied upon in the court of review as the ground of reversal.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Lyman G. Wheeler, for plaintiff in error.

Horace Kent Tenney, for defendant in error.

Before JENKINS and BAKER, Circuit Judges, and BUNN, District Judge.

BAKER, Circuit Judge. Plaintiff in error brought its action for damages for breach of contract. At the close of the evidence the

court directed the jury to return a verdict for defendant. This writ is prosecuted to reverse the resulting judgment, and the assignments of error question the correctness of the court's rulings in rejecting certain evidence, in refusing to direct a verdict for plaintiff, in directing a verdict for defendant, in denying a new trial, and in entering judgment on the verdict.

To sustain its declaration, plaintiff proved a contract, dated November 11, 1901, in which defendant sold and agreed to deliver to plaintiff 600 to 700 tons of iron, at $15 a ton, in such lots as plaintiff should direct, during 1902, on a credit of 30 days from delivery; plaintiff's order on October 6, 1902, for 700 tons; defendant's refusal on October 8, 1902, to ship any iron to plaintiff; and the market price of $27 on October 8, 1902. This made out a case, and defendant introduced no evidence in denial.

Defendant offered a large amount of evidence under its special plea of plaintiff's insolvency, but it was all ruled out.

Under its special plea, held good on demurrer, that on July 22, 1902, plaintiff had sold its plant and assigned its contract with defendant to Pawling & Harnishfeger, and had notified defendant to make deliveries to plaintiff's successors, defendant introduced letters from plaintiff and its successors in business, dated August 1 and 2, 1902, notifying defendant that on July 22, 1902, plaintiff had sold, and Pawling & Harnishfeger had purchased, the plant and the contract; plaintiff directing defendant to honor the orders of its assignees, and Pawling & Harnishfeger requesting the shipment of 100 tons to them to apply on the contract.

Unless this evidence were overcome in some way on rebuttal, there could be no error in directing a verdict for defendant. Whatever the rights of Pawling & Harnishfeger under the assignment, plaintiff could (and, under this evidence, it did) surrender its right to demand iron from defendant.

On rebuttal, plaintiff introduced the following instrument:

"Milwaukee, Wis., September 4th, 1902.

"Whereas, heretofore Pawling & Harnishfeger did agree in writing to pay to Gardiner Campbell Company $4,000 for the assignment of a certain contract, dated November 11th, 1901, between Gardiner Campbell Company and Iroquois Iron Company for the sale of six to seven hundred tons of number two foundry Iroquois pig iron, providing the consent of Iroquois Iron Company could be obtained to the assignment of said contract; and whereas said Iroquois Iron Company has refused and does refuse to consent to the assignment of said contract; now therefore Pawling & Harnishfeger have this day returned said contract to said Gardiner Campbell Company and have cancelled said assignment, and such return and cancellation of the assignment is hereby consented to by us. Pawling & Harnishfeger."

And also the following letter from Pawling & Harnishfeger to Iroquois Iron Company, dated October 3, received October 4, 1902:

"We desire to notify you that the contract between you and Gardiner Campbell Company for some 700 tons of pig iron, which was assigned to us some time ago, has been returned to Gardiner Campbell Company and the assignment thereof to us cancelled."

And this was all the evidence.

Defendant's evidence, if uncontradicted, inevitably established that on July 22, 1902, plaintiff made an absolute sale of the contract and

notified defendant thereof, which would have the effect of a rescission or a surrender of plaintiff's right to demand delivery of iron from defendant. The notice of October 3d, so far from denying the assignment of the contract, reaffirms that fact, and advises defendant of a reassignment to plaintiff by means of Pawling & Harnishfeger's return of the contract to plaintiff, and their cancellation of the assignment to them. No evidence was admitted to show that defendant had notice of the first recital in the instrument of September 4th, or of the existence of any executory agreement for the assignment of the contract preceding the actual assignment of July 22d. But ignoring that omission, it is to be observed that the granting part of the instrument accords exactly with the letter of October 3d, and recognizes that an assignment had been made. And the first recital, if true and known to defendant, namely, that there had been an executory conditional agreement for an assignment, did not negative the fact of the assignment. Consequently there was no evidence to sustain the replication, which was the general issue; and the assignments of error respecting the court's declining to direct a verdict for plaintiff, the direction of a verdict for defendant, the refusal of a new trial, and the entry of judgment on the verdict, go by the board.

There remain two matters of rejected evidence. Plaintiff offered a contract, dated July 15, 1902, in which plaintiff agreed to sell and convey to Pawling & Harnishfeger its plant for "$8,000 to be paid upon the completion of such sale and delivery," and further "to sell, assign and deliver to you our contract with Iroquois Iron Company [describing it] for $4,000 to be paid upon the assignment and delivery of such contract, providing consent is given to such transfer by Iroquois Iron Company." When, on July 22, 1902, the parties came to fulfill the unconditional agreement for the sale and delivery of the plant, it was within their power to ignore the condition they had put in the agreement for the assignment and delivery of the contract, and to make an absolute assignment and delivery. Therefore the executory agreement, if admitted, would have been no proof that an assignment had not been made exactly as plaintiff informed defendant. There was no offer by plaintiff to deny the truth of its notice to defendant by showing that no assignment and delivery of the contract had in fact been made, and that no contract existed between itself and Pawling & Harnishfeger, except an unfulfilled, executory contract, which had not been performed on account of defendant's refusal to consent.

Plaintiff's manager was not permitted to answer the following question:

"Did you have any talk with Mr. Billingslea [defendant's agent] at that time as to the nature of this assignment to Pawling & Harnishfeger and as to its terms?"

And plaintiff offered to prove by the witness that, at the time named in the question, defendant was notified that the assignment referred to was conditional upon defendant's consent. And hereon is predicated error. It is evident that what plaintiff's counsel was referring to as "this assignment" must be learned from the context. The preceding question and answer are as follows:

"Were you in Chicago some time between the time of the assignment to Pawling & Harnishfeger, or the agreement to sign [assign], and the time when you made this demand, in October? A. I was."

And immediately following the offer, the record shows that plaintiff's counsel called the court's attention to the agreement of July 15th, commencing with the word "providing," and offered to show that defendant had notice of that condition. The court understood counsel to refer to the agreement of July 15th, which had just been offered in evidence and excluded, as being the "this assignment" of the question; and it is impossible to see how, from the record, the court could have understood anything else. Counsel claims that, under the replication of the general issue, plaintiff had the right to prove that no such assignment had been made as it notified defendant of; that no contract between it and Pawling & Harnishfeger had ever been entered into, except the executory agreement of July 15th; that nothing was done under that, except to request defendant to agree to the substitution; and that defendant had notice of all these facts after August 2d, and before refusing on October 8th to ship any iron to plaintiff. The allowance of this claim might depend somewhat on whether the circumstances were such as to permit plaintiff subsequently to deny the truth of its assertion to defendant that it had no interest in the contract; but, passing that. if a judgment is to be reversed for the exclusion of evidence, the record must show interrogatories and offers (if the latter be permissible) which presented to the trial court the question advanced in the court of review as the ground of reversal.

The judgment is affirmed.